24 C.C.P.A.(Patents)

## In re WILCOX.

### Patent Appeal No. 3752.

Court of Customs and Patent Appeals.

Feb. 8, 1937.

William D. Wilcox, pro se.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed an application in the United States Patent Office for a patent upon alleged improvements in the process of treating hydrocarbon gases and vapors to obtain carbon black, acetylene, and hydrogen. The Primary Examiner rejected claims 25, 26, 28, and 32 to 37, inclusive, all the claims in the case, relying upon the following references:

Brownlee et al., 1,276,487, August 20, 1918.

Spear et al., 1,794,558, March 3, 1931.

Wulff, 1,843,965, February 9, 1932.

Wilcox, 1,916,545, July 4, 1933.

Wulff, 1,917,627, July 11, 1933.

International (Br.), 352,688, July 16, 1931.

Lewes, Acetylene, p. 67 (1900).

All the rejected claims are for a process.

Claim 25 is considered as typical, and is as follows: "25. The process of obtaining finely divided carbon and acetylene by the dissociation of hydrocarbon gases and vapors, carried out within a refractory walled chamber filled with a multiplicity of refractory walled flues, of relatively small cross sectional area, which comprises heating the flue walls to a temperature substantially in excess of 2400° F. by a precedent combustion within the chamber, then passing hydrocarbon gases through the flues at a velocity and with a time of contact with the heated surfaces such that a substantial portion of the methane in the hydrocarbon gas or derived by the dissociation of more complex hydrocarbons will remain undecomposed, immediately cooling the effluent gas to a temperature at which acetylene is stable, recovering the carbon, and absorbing out the acetylene."

The examiner rejected claim 25 as unpatentable either over Brownlee et al. or Wulff, 1,917,627. He stated: "To only partially dissociate the methane-containing hydrocarbon gas as is done by Wulff 1,843,965 or by British patent 352,688, who use similar temperatures, is not thought to be patentable as that is a matter of choice." The Board of Appeals affirmed the decision of the examiner, and appeal is taken here.

The other rejected claims were rejected similarly to claim 25.

The apparatus employed in the process has already been patented to the appellant in Wilcox, 1,916,545, of July 4, 1933.

The process is thus explained by the examiner in his statement on appeal:

"The alleged invention relates to a process for making carbon black, acetylene, and hydrogen.

"The apparatus includes a heat exchanger A, a hydrocarbon gas cracking and dissociation chamber B, C, a cooling chamber D, a cyclone separator E and a chamber F containing bag filters. Air is preheated in heat exchanger A and passes through pipe 2 and valve 3 in chamber B where it is mixed with hydrocarbon gas admitted from supply pipe 4. This mixture of hydrocarbon gas and air is burned in the flues of refractory walled chamber B, C, to heat the flues and thus forms a heat-

ing period or cycle. The heating is continued until the refractory flues have a temperature in excess of 2400 F, and then the heating period is discontinued. The admission of air is stopped. Then the alternate hydrocarbon gas dissociation period takes place by admitting hydrocarbon gas alone into and through the highly heated chamber B, C, and the gas is cracked or dissociated into carbon black together with some hydrogen and acetylene due to the high temperatures in the heated flues of chamber B, C.

"The mixture of hydrogen and acetylene together with entrained carbon black passes from the cracking chamber into cooler D where the mixture is cooled by water admitted through sprays 5. The cooled mixture passes then into cyclone separator E where some of the carbon black is deposited and the remainder of the carbon black is collected in the bag filters F. After removing the entrained carbon black, the mixture of hydrogen and acetylene is further cooled in scrubber G to which water is admitted through 6. The cooled hydrogen and acetylene mixture is then collected in gas holder H and from H pass through compressor I into scrubbers J and J' to which acetone is admitted from 8 and 8' and acetylene is absorbed by the acetone and thus separated from the hydrogen. The acetone containing absorbed acetylene is removed from scrubbers J and J' through outlets 9. When the temperatures in dissociating chamber B, C, become too low, the alternate heating period is repeated until temperatures for dissociating the hydrocarbon gas are again attained."

The patent to Brownlee et al. discloses a process for the manufacture of hydrogen and carbon black. A mass of highly refractory material is heated in an insulated chamber. A suitable hydrocarbon gas, in the absence of air, is then passed through the refractory heated material and is decomposed, producing hydrogen and carbon, which pass out of the chamber through a conduit extending through a cooling bath of water. This cooling causes a deposit of the carbon which is recaptured by suitable apparatus and the hydrogen also passes off and into a suitable receiving tank.

The temperature used in the refractory material is approximately 1400°C. The suitable hydrocarbon gas may be natural gas.

The patent to Wulff, 1,917,627, is for a process for producing acetylene gas. The patent discloses the use of hydrocarbons, such as natural gas. In the center of a furnace is a mass of heating and contacting particles, formed from, preferably, carborundum crystals of small size. Ignited air and fuel gas is caused to pass through the refractory material and heats it to about 2600°F. or greater. Raw natural gas is then caused to flow through this heated material and is cracked thereby, forming acetylene gas and carbon particles. The heated gas then passes into a tube where it is suddenly chilled by the washing action of wash fluid and becomes stable acetylene gas. The carbon is recovered by subsequent washing processes.

In the patent to Wulff, 1,843,965, some modification of the Brownlee et al. process is disclosed. Here natural or artificial gas may be enriched by addition of higher hydrocarbons. This mixture is then given thermal treatment. The higher the temperature that is used in the process, the higher the rate of flow of the heated gases is to be. The underlying theory is that the heated gas must be withdrawn and cooled before the acetylene gas formed in the process begins to decompose.

The British patent, 352,688, plainly discloses the formation of acetylene gas from the pyrogenation of methane at temperatures from 700° to 1300°C., and still higher.

Certain points are raised by appellant in his brief which rest upon differences between the apparatus of appellant and the apparatus used by the reference patentees. However, there being no apparatus claims here involved, it cannot be seen where such changes in apparatus can impart patentability to a process already well known in the prior art.

The Board of Appeals, in summing up, states:

"From the disclosures of these patents, it is our view that applicant has combined the processes known in the art of producing these various products, carbon, acetylene, and hydrogen with methane from hydrocarbons, such as natural gas into one general process, and that there is no new and improved result or process by merely an association of old processes, each performing in the combined process the same function and producing the same result as it did before in the known separate processes.

"The rejection of the other claims, which are considered in detail by the examiner, is substantially on the same basis as that of claim 25 and for the same reasons, and it is our view that these claims are unpatentable over the art for the reasons given in connection with claim 25."

We agree with the decision of the Board of Appeals, and it is affirmed.

Affirmed.